**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL BRAND LICENSING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | 3-02CV-782-L |
| VS. | § | Civil Action No. _____ |
| | § | |
| WILLIAMSON-DICKIE | § | 402-CV-0663-A |
| MANUFACTURING COMPANY, A | § | |
| Texas Corporation and | § | |
| WILLIAMSON-DICKIE | § | |
| MANUFACTURING COMPANY | § | |
| A Delaware Corporation | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff National Brand Licensing Inc. ("National" or "NBL") complains of Defendants Williamson-Dickie Manufacturing Company, a Texas corporation ("Williamson-Dickie Texas") and Williamson-Dickie Manufacturing Company, a Delaware corporation ("Williamson-Dickie Delaware") (collectively, "Defendants") as follows:

### PARTIES

1. National is a corporation incorporated under the laws of the State of New York having its principal office and place of business in the State of California.

**COMPLAINT – Page 1**

2. Williamson-Dickie Texas is a corporation incorporated under the laws of the State of Texas having its principal office and place of business in the State of Texas. Williamson-Dickie Texas may be served with summons through its registered agent CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201. The Clerk of this Court is hereby requested to serve Williamson-Dickie Texas by transmitting citation and a copy of this Complaint, by certified mail, return receipt requested, to Williamson-Dickie Manufacturing Company care of its registered agent at the address herein above set forth.

3. Williamson-Dickie Delaware is a corporation incorporated under the laws of the State of Delaware having its principal office and place of business in the State of Texas. Williamson-Dickie Delaware may be served with summons through its registered agent CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201. The Clerk of this Court is hereby requested to serve Williamson-Dickie Texas by transmitting citation and a copy of this Complaint, by certified mail, return receipt requested, to Williamson-Dickie Manufacturing Company care of its registered agent at the address herein above set forth.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332. National is a citizen of New York and California while Williamson-Dickie Texas is a citizen of Texas and Williamson-Dickie Delaware is a citizen of Delaware and Texas. There is therefore complete diversity of citizenship between the parties and the object of the present action or the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, as specified by 28 U.S.C. § 1332.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) since Williamson-Dickie Texas and Williamson-Dickie Delaware are residents of this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## STATEMENT OF FACTS

6. On or about July 30, 1980, National and Williamson-Dickie Texas entered into a written agreement ("Agreement") providing for National to act as Williamson-Dickie Texas' licensing agent for the purpose of securing manufacturers willing to enter into licensing arrangements and to pay royalties for the use of licensed trademarks and/or trade names owned by Williamson-Dickie Texas.

7. The 1980 Agreement was subsequently amended by five successive letter amendments between 1982 and 1990 adding further product categories as areas in which Defendants authorized National to act as their exclusive agent for licensing Defendants' trademarks and trade names.

8. Then a May 29, 1991 amendment to the Agreement:

(a) provided for a five-year term through 1996 before resumption of the parties' annual right to terminate upon notice (amendment to paragraph 8.1 of the Agreement);

(b) required Gene or Miriam Summ (the two principals of National) personally to provide specified licensing services to Defendants (amendment to paragraph 5.3 of the

Agreement);

    (c)    provided that failure by the Summs to do the licensing work personally in specified ways would cause a termination both of the licensing contract and of National's right to a 15% share of the proceeds from continuing license arrangements that National had previously obtained or prospected (amendment to paragraph 5.3 of the Agreement); and

    (d)    specifically stated that, "termination of this Agreement by either party shall not affect Licensor's obligation to make payments as set out in [paragraph] 5.2 [i.e., 15% of proceeds from continuing licensing arrangements obtained or prospected by National]." (amendment to paragraph 5.3 of the Agreement)

    9.    Upon information and belief, Williamson-Dickie Delaware assumed the obligations of Williamson-Dickie Texas under the Agreement and otherwise.

    10.    In a provision not amended in 1991, the Agreement provides in paragraph 5.2 that National shall receive licensing royalties as follows:

> Upon execution by Licensor [Defendants] and a third party of any license applicable to any of the Rights, Licensor shall assign to NBL a 15% interest in any and all proceeds which Licensor may derive from such license, whether by way of royalty, sales or any other type of compensation. All sums due to NBL pursuant to the provisions of this Section 5.2 shall be paid on or before the 10th day following the month in which the Licensor receives payment from licensee, and shall be accompanied by a statement setting forth in reasonable detail the matter in which such payments have been computed.

    11.    The amended Agreement further provides in paragraph 8.1 that either party may terminate the Agreement with at least ninety (90) days written notice prior to the expiration of the Agreement and that, "In the event of any termination hereunder, all

<u>COMPLAINT</u> – Page 4

payments provided for under Section 5.2 and 5.3 shall continue to be paid."

12. By letter dated February 26, 1998, Defendants notified National that they were terminating the Agreement, as amended, effective May 31, 1998. In this letter, Defendants recognized that National had worked on behalf of Defendants for almost twenty (20) years, but indicated that they had decided to internally manage their licensing efforts in the future. Defendants further stated in this letter that they would visit with National "about the winding down of the relationship" between the parties.

13. In response, on or about March 9, 1998, National provided Defendants with the names of the current licensees established by National and stated in the accompanying letter: "I'm sure you are aware that our Agreement provides that your obligation to pay to [National] its 15% interest in the proceeds you derive from licenses in place continues."

14. National also provided to Defendants, on or about March 9, 1998, the names of prospective licensees for which national was to receive payment if Defendants established a licensing arrangement with any such prospective licensee within six (6) months of Defendants' termination of the Agreement.

15. From the 1998 termination of the amended Agreement through 2001, Defendants made periodic payments to National totaling approximately $868,000 as National's contractually required 15% share of royalties on still continuing licensing arrangements obtained or prospected by National.

16. By letter dated January 30, 2002, Defendants notified National that after more than three years of post-termination payments, they would now stop paying National its 15%

share of royalties on deals obtained or prospected by National unless National could show that Gene or Miriam Summ had continued in six specified ways to act as Defendants' licensing agent <u>even after Defendants had terminated National, the Summs' firm, as licensing agent</u>.

17. Defendants' refusal to continue paying National its 15% share of royalties on deals obtained or prospected by National violates the following specific provisions of the amended Agreement:

(a) Paragraph 5.3, as amended, which states that "termination of this Agreement by either party shall not affect Licensor's obligation to make payments as set out in [paragraph] 5.2."

(b) Paragraph 8.1, as amended, which authorizes either party to terminate the agreement on notice and states that, "In the event of any termination hereunder, all payments provided for under Section 5.2 and 5.3 shall continue to be paid."

18. Defendants then unilaterally ceased making the payments to National that are required by the terms of the amended Agreement.

## CAUSES OF ACTION

21. **Breach of Contract.** Defendants had a duty under the Agreement, as amended, to pay National a percentage of the proceeds received from certain licensing arrangements established and/or prospected by National. Defendants have refused, and continue to refuse, to make the required payments to National. Thus, Defendants have failed to meet their obligations under such Agreement, as amended, and, as a direct and

proximate result, National has suffered economic damages in excess of $75,000, exclusive of interest and costs.

22. **Declaratory Judgment.** National states that there is an actual, justiciable controversy between the parties and requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201 whether National is entitled to receive a percentage of the proceeds received by Defendants from licensing arrangements established by National and/or prospected by National and established by Defendant within six (6) months of the amended Agreement's termination. National further seeks a declaratory judgment from the Court that paragraph 5.3 of the amended Agreement does not apply to the situation in which National is terminated pursuant to paragraph 8.1 and, therefore, does not limit the payments required by Defendants under paragraph 5.2 of the Agreement, as amended.

23. **Attorneys' Fees.** National has engaged the undersigned counsel to prepare and file this Complaint and prosecute the claims alleged herein and has agreed to pay them a reasonable attorneys' fee for their services herein and on appeal. National alleges that such fees exceed $25,000.

24. **Conditions Precedent.** All conditions precedent to the recovery sought herein have been satisfied, have previously occurred, or are excused by the doctrines of waiver, estoppel, or laches.

## JURY DEMAND

25. National hereby demands a trial by jury on all issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER

26. WHEREFORE, PREMISES CONSIDERED, National requests, that upon final hearing, it be awarded the declaratory relief set forth above and judgment against Defendants for its economic damages, attorneys' fees incurred herein, interest thereon before and after judgment at the highest lawful rate, all costs of court, and such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

FIGARI DAVENPORT & GRAVES, L.L.P.

By: _____
Ernest E. Figari, Jr.
State Bar No. 06983000
Melissa A. Mitchell
State Bar No. 24013175

3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202
(214) 939-2000
(214) 939-2090 (FAX)

ATTORNEYS FOR PLAINTIFF
NATIONAL BRAND LICENSING, INC.