IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONAL BRAND LICENSING, INC., | § § § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 4:02-CV-0663-A |
| WILLIAMSON-DICKIE MANUFACTURING COMPANY, a Texas corporation, and WILLIAMSON-DICKIE MANUFACTURING COMPANY, a Delaware corporation, | § § § § § § § § | |
| Defendants. | | |

## DEFENDANT'S RESPONSE TO MOTION OF NATIONAL BRAND LICENSING, INC. FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes Williamson-Dickie Manufacturing Company, Inc. (hereinafter referred to as "Dickies" or "WD"), to file and make, subject to and without waiving the objections to summary judgment proof separately filed, its response to the motion for partial summary judgment filed by National Brand Licensing, Inc. ("NBL") and would respectfully show the court as follows:

### I.
### WRITTEN AGREEMENT ALONE EXPRESSES INTENT OF PARTIES

The 1991 amendment to the agency agreement is clear; in plain language; and unambiguous. Evidence of negotiations circumstances and intent extraneous to the terms of the agreement as written is incompetent and should not be considered. This

case does not present the type of fact pattern in which the surrounding circumstances should be considered. This court should look solely to the written agreement along with the 1991 amendment thereto to determine the intent of the parties, rather than to consider what individuals now claim to recall about their intent in 1991.

## II.
## PAYMENTS CEASE IF BOTH GENE AND MIRIAM SUMM CEASE ACTIVE ENGAGEMENT IN THE BUSINESS

The main issue in this case is whether, after the exclusive agency agreement terminated by non-renewal, WD's obligation to make payments to NBL ceases if both Gene Summ and Miriam Summ have "ceased to be actively engaged in the business" as that phrase is defined in section 5.3 of the 1991 amendment. NBL contends that termination of its exclusive agency by non-renewal eliminates the requirement that Gene or Miriam Summ be actively "engaged in the business".

Dickies contends the plain reading of 1991 amendment along with the exclusive agency agreement as a whole reveals that termination of the agency relationship through non-renewal does not affect either of the provisions establishing the duration of its obligation to pay NBL. Payments cease when the licenses expire or when both Gene and Miriam Summ have ceased to be "actively engaged in the business" regardless of whether the agency agreement has been terminated. While termination of the agreement does not affect duration the payments, the agreement is terminated if payments cease.

## III.
## NON-RENEWAL OF AGREEMENT DOES NOT AFFECT DURATION OF OR CONDITIONS FOR PAYMENT

In the original agreement the duration of WD's obligation to pay NBL a percentage of royalties was limited only by the life of the licenses. Termination of the agency agreement did not affect how much or for how long NBL gets paid. Taken together as a whole the agreement as amended, terminated by non-renewal of the agency agreement, has no effect on whether or for how long NBL gets paid 15% of the revenues Dickies receives from licenses. Payments to NBL cease if either the licenses expire or if both Gene and Miriam Summ cease to be "actively engaged in the business."

NBL's contention that non-renewal of the agency agreement eliminates the provision that payments cease if both Gene and Miriam Summ cease to be "actively engaged in the business" is an incorrect rendering of the language of the amendment. Review of the language of the amendment in light of the entire agreement readily reveals that NBL's construction is grammatically incorrect, is inconsistent with the agreement as a whole, and is illogical. The original agreement separated the event of termination of the exclusive agency agreement from the duration of the obligation to pay NBL. The 1991 amendment clearly retained this distinction for termination by non-renewal of the agreement. Because non-renewal of the exclusive agency agreement does not affect whether or for how long NBL gets paid, ***termination eliminates neither that payments to NBL cease if the licenses cease nor that payments cease if both Gene and Miriam Summ have ceased to "be actively engaged in the business." There is no

reasonable basis to render language plainly stating that termination of the exclusive agency has no effect on the payment obligation as eliminating the condition that payments cease if both Gene and Miriam Summ cease "active engagement" but leaves the provision that payments cease if the licenses expire unchanged.

## V.
## LACK OF AUTHORITY NO EXCUSE FOR NBL

NBL attempts to excuse its admitted failure to "actively and regularly solicit new licensees" for Dickies by claiming non-renewal of the agency agreement revoked its authority to solicit new licensees. No legal authorization is required for NBL to solicit licensees. However, even if some authority is necessary, the fact the 1991 amendment conditions payments on continued solicitation of new licenses at least by implication clearly authorizes NBL to continue new license solicitation on a non-exclusive basis beyond termination of the agency agreement.

## V.
## CONSIDERATION OF PAROLE EVIDENCE CREATES FACT ISSUE

Williamson-Dickies continues to contend that evidence of the intent of the parties should be determined solely by the contract as written and amended. However, in the unlikely event that WD is in error in its analysis and the court is inclined to consider extrinsic evidence, Dickies would show that a memo prepared at the direction of R. Stephen Lefler on May 14, 1991 (WD's APPENDIX pgs. 3-5) clearly expresses WD's intent. The written expression of intent in the Lefler memo is clear and consistent with the terms of the 1991 amendment as actually executed by the parties. Lefler's recollection of his 1991 intent as claimed in his 2003 declaration (Appendix to NBL's

Motion for Partial Summary Judgment Tab E pgs. 247-272) is quite inconsistent with his 1991 memo.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Williamson-Dickie Manufacturing Company, Inc., prays that upon consideration hereof that the court will deny NBL's Motion for Partial Summary Judgment. Williamson-Dickie Manufacturing Company prays for general and such other relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

_____
Daniel L. Bates
State Bar No. 01899900

Decker, Jones, McMackin, McClane,
 Hall & Bates, P.C.
Burnett Plaza, Suite 2000
801 Cherry Street, Unit #46
Fort Worth, Texas 76102-6836
(817) 336-2400
(817) 332-3043 fax
ATTORNEY FOR DEFENDANT

## Certificate of Service

I HEREBY CERTIFY that this instrument was provided to:

Ernest F. Figari, Esq.
Dennis M. Lynch, Esq.
Figari Davenport & Graves
901 Main St., Suite 3400
Dallas, TX 75202

in accordance with the Federal Rules of Civil Procedure, on this __3rd__ day of ___February___, 2003.

_____
Daniel L. Bates