United States Court of Appeals
Fifth Circuit

F I L E D

January 14, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 03-10313
Summary Calendar

---

NATIONAL BRAND LICENSING, INC.,

    Plaintiff-Counter Defendant-Appellee,

VERSUS

WILLIAMSON-DICKIE MANUFACTURING CO., Etc; ET AL,

    Defendants,

WILLIAMSON-DICKIE MANUFACTURING CO., A Delaware Corp.,

    Defendant-Counter Claimant-Appellant.

---

Appeals from the United States District Court
for the Northern District of Texas
(02-CV-663)

---

Before BARKSDALE, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Defendant-Appellant, Williamson-Dickie Manufacturing, Co., Inc. ("WD") brings this appeal of a district court decision granting summary judgment to Plaintiff-Appellee, National Brand

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Licensing, Inc. ("NBL"). WD contends that the district court erred in granting summary judgment to NBL, holding that a contract between the parties requires it to make royalty payments to NBL. Because the district court properly granted NBL summary judgment, we affirm its decision.

NBL is owned and run by Gene and Miriam Summ. It solicits, negotiates, structures, and markets licenses of intellectual property on behalf of its clients. WD manufactures and sells workplace apparel, including the Dickie brand. In 1980, the parties entered into an agreement ("Agreement") whereby NBL would be the exclusive agent of WD for the purpose of selling licenses to use the Dickie Brand to third persons. NBL would receive 15% of the proceeds that WD obtained from these licenses.

In 1998, WD terminated the Agreement pursuant to a non-renewal provision contained in the Agreement, but continued to pay NBL royalties for licenses that NBL procured while the Agreement was in force. In 2002, WD stopped all payment of royalties to NBL, claiming that the Agreement no longer obligated it to make payments. NBL brought this suit seeking a declaration that the Agreement obligates WD to continue royalty payments. WD counterclaimed for reimbursement of royalty payments made between 1998 and 2002. Both parties moved for summary judgment, claiming that their interpretation of the Agreement was correct. The district court granted NBL's motion for summary judgment, holding

that the Agreement obligated WD to make royalty payments and WD brings this appeal.

We review the legal determinations in the district court's decision to grant or deny summary judgment *de novo*. *See Travelers Ins. Co. v. Liljeberg Enters.*, 7 F.3d 1203, 1206 (5th Cir. 1993). Contract interpretation is a purely legal issue; accordingly, we review the district court's interpretation of a contract *de novo*. *See Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000). We interpret this contract under Texas law, which states that an unambiguous contract shall be enforced as written, and that a contract is only ambiguous if it is reasonably susceptible to more than one meaning. *See Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 861 (Tex. 2000).

Although the Agreement may be unclear in some instances, it is not ambiguous in any material sense. The Agreement provides that either party may elect to terminate the Agreement by giving the other party notice in writing of such termination 90 days prior to the expiration of the Agreement. The Agreement further provides that in the event of its termination by this method, the 15% of the proceeds of each existing license provided to WD by NBL shall continue to be paid during the life of each license. The Agreement also provides that upon either (1) the termination of all licenses and renewals thereof according to their terms, or (2) the cessation of being "actively engaged in the business," as defined by the

Agreement, by both Gene Summ and Miriam Summ, the Agreement shall automatically terminate and be of no further effect.  Because it is undisputed that the Agreement was terminated  because WD elected to do so by giving NBL 90 days notice prior to the expiration of its term, and not by the operation of either of the other termination provisions, WD continued to be obligated to make payments of the assignments of license proceeds to NBL during the life of each relevant license and renewal thereof.

The judgment of the district court is AFFIRMED.